Carroll Ray LYNN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–009–CR.

Court of Appeals of Texas,
Corpus Christi.

July 29, 1993.

Discretionary Review Refused
Nov. 17, 1993.

Mark Alexander, McAllen, for appellant.

Theodore C. Hake, Cynthia A. Morales, Asst. Crim. Dist. Attys., Rene Guerra, Dist. & County Atty., Edinburg, for the state.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, J.

## OPINION

DORSEY, Justice.

Appellant pleaded not guilty to the offense of murder,[1] after which a jury found him guilty and assessed punishment of 30 years' imprisonment and a $10,000 fine. By five points of error, appellant complains of the charge submitted to the jury and of certain evidence admitted by the trial court. We affirm.

By points of error one, four and five, appellant maintains that the trial court erroneously failed to include a defensive issue regarding voluntariness in the charge, as well as the lesser-included offenses of involuntary manslaughter and criminally negligent homicide.

Carolyne Garcia, an eye-witness to the shooting in this case, testified that on May 3, 1991, she, the appellant, the victim, and several others were having a barbecue at the home of a couple, Glennda Wise and Jimmy Weaver. All had been drinking beer for most of the day, and appellant and Weaver decided to go to a bar together. Weaver and Glennda Wise argued, she not wanting him to go with the appellant. Weaver left in a rage with the appellant. Wise was afraid to stay at home when Weaver came back from the bar, so she asked the victim to take her, her two children, and Garcia to a motel. The victim suggested that they all go to his house.

Sometime after midnight, appellant arrived at the victim's house, inebriated. He had blood splattered on him, and he himself was bleeding, after apparently getting into a fight with Weaver. Appellant was "pacing back and forth and ranting and raving that he wanted to leave." Appellant wanted everyone to leave the victim's house. Garcia testified that she told appellant she was not going to leave with him, and appellant put a gun to her neck and told her she was going with him. He also ordered the victim to leave with them.

The three left the house and moved towards the victim's truck. The victim got into the driver's side, with Garcia sitting in the middle of the front seat of the cab. Garcia testified that the appellant was on the passenger's side of the vehicle, and he "was in and out of the truck. And he was hollering at [the victim], looking for something." The appellant was yelling, "Where is it?" but Garcia did not know what he was looking for. Garcia testified that appellant was waving the gun around the entire time, with his arm

---

1. TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989).

inside the truck, asking the victim where this lost object was. The victim leaned across Garcia, trying to calm the appellant down; Garcia asked the victim what appellant was looking for. She stated that at that moment, the gun went off.

Garcia testified that the victim fell over in her lap. Appellant walked around to the driver's side of the vehicle and pulled the victim out, throwing his body against a wall and leaving it in the driveway. The appellant, with Garcia still in the vehicle, fled the scene. They went to the apartment of some friends and appellant borrowed their car.

Appellant and Garcia drove toward Houston; en route, appellant changed his blood-splattered clothes and discarded them, ordering Garcia to do the same. Meanwhile, the car was overheating sporadically. As a result, the two left the car on the side of the highway and hitchhiked the rest of the way to Houston. When they arrived in town, appellant checked them into a hotel using an assumed name.

No evidence existed of a dispute between appellant and the deceased, of a fight, or of hard feelings between them at the time of this incident. Rather, the evidence suggested that appellant and Weaver had been fighting and the appellant was trying to leave the victim's apartment before Weaver returned. No motive or reason for the killing was given.

During the charge conference, appellant requested an instruction on voluntariness because Garcia testified that he appeared to be in a panicked state at the time of the shooting, and that he felt no animosity towards the victim. Moreover, Garcia testified that appellant told her later that the shooting was an accident, that he did not mean to do it, and that his finger slipped, causing the gun to discharge. Appellant requested that the trial court include the following instruction, in pertinent part, in the jury charge:

Now if you find from the evidence beyond a reasonable doubt that on or about the 4th day of May, 1991 the Defendant CARROLL RAY LYNN, JR., did cause the death of JOHN DAVID GLICK by shooting him with a deadly weapon, ... but ... the shooting was a result of an accidental discharge of the gun when CARROLL RAY LYNN, JR., was outside the victim's truck, on the passenger's side, searching for a lost item and while in a state of panic and despair and said discharge was not the voluntary act or conduct of the Defendant, you will acquit the Defendant....

Appellant maintains that the charge he requested "was more in the nature of a voluntary conduct charge than an accident charge," and that such a charge is proper. The State contends that merely asserting that an "accident" occurred, i.e., that the accused's finger slipped off the trigger or that the gun "just went off" will not by itself raise an issue of voluntariness.

■ If the evidence does not raise the issue of involuntary conduct, the trial court need not include that instruction in its charge to the jury. *George v. State*, 681 S.W.2d 43, 47 (Tex.Crim.App.1984); *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982); *Gaona v. State*, 733 S.W.2d 611, 617 (Tex. App.—Corpus Christi 1988, pet. ref'd). It has been suggested that involuntary conduct is not a defense to a crime, but rather, voluntary conduct is an element of the offense that the State has the burden to prove. *George*, 681 S.W.2d at 46 n. 6; *Joiner v. State*, 727 S.W.2d 534, 536 n. 3 (Tex.Crim. App.1987); *accord*, *Ross v. State*, 763 S.W.2d 897, 900 n. 1 (Tex.App.—Dallas 1988, pet. ref'd). When the proposed defensive theory merely denies an element the State must prove, an instruction on that theory is not necessarily required. *Moore v. State*, 736 S.W.2d 682, 684 (Tex.Crim.App.1987); *Ross*, 763 S.W.2d at 900 n. 1.

■ It has been held that the court is not required to charge the jury on involuntary conduct if the appellant engaged in a single voluntary act, with the required mental state, and an involuntary act becomes part of the appellant's overall conduct. *Joiner*, 727 S.W.2d at 536–37; *George*, 681 S.W.2d at 47; *Gaona*, 733 S.W.2d at 617. In *George*, the defendant ordered the victim to give him a dollar. When the child refused, the defendant pointed a revolver at the victim, pulling the hammer back slightly. Defendant testified that the gun accidentally discharged

when his thumb slipped off of the hammer. The trial court refused to give an instruction on involuntary conduct, and this action was upheld by the high court. *George,* 681 S.W.2d at 47. The court of criminal appeals reasoned that the defendant voluntarily engaged in conduct up to the moment that his thumb slipped off the hammer of the gun, and that his conduct would not be considered involuntary merely because he did not intend the results of his actions. *George,* 681 S.W.2d at 45–46.

In *Gaona,* the defendant and the victim were involved in a scuffle that defendant wished to end. *Gaona,* 733 S.W.2d at 616. In order to "scare" the victim into stopping the scuffle, defendant went inside his house and brought out his .22 rifle. *Id.* Defendant testified that he had his finger on the trigger, but was not aiming the gun at the victim and did not intend to pull the trigger or to shoot the gun. Defendant testified that "all I remember is I had the gun . . . and it just went off." *Id.* Appellant surmised that he "must have slipped," because he was standing on sloped pavement when the gun went off. This court held testimony that a weapon "just went off" does not render an act involuntary so as to require a voluntariness instruction in the jury charge. *Id.* at 617. We reasoned that although the defendant denied aiming the rifle at the victim, the defendant acted voluntarily up to the moment that the rifle discharged. *Id.*

■ The jury charge in this case instructs the jury to find appellant guilty of murder if they determine, beyond a reasonable doubt, that he intentionally and knowingly caused the death of the victim by shooting him with a deadly weapon. Voluntariness is an element of the offense that the State was required to prove. A defensive issue on the same element is not necessary.

Moreover, we find the facts of this case analogous to those cited above. Appellant voluntarily threatened Garcia with a weapon in order to force her to leave the victim's house. In so doing, he persuaded the victim to leave the house as well. Appellant held a loaded weapon inside a pickup truck in which

Garcia and the victim were seated. He continued to position the gun there while he searched for something, yelling at the victim to tell him where it was. Every action taken by the appellant was voluntary up to the moment the gun fired.

The trial court did not err by refusing to include an instruction regarding voluntariness. Point of error one is overruled.

■ Appellant complains the court erred in failing to charge on the lesser-included offenses of involuntary manslaughter and criminally negligent homicide. However, appellant's counsel did not request that the jury be charged on these offenses. When no request has been made that the jury be instructed on lesser-included offenses, and there is no objection to their exclusion, their absence is not reversible error. *Kinnamon v. State,* 791 S.W.2d 84, 96 (Tex.Crim.App. 1990); *Fuller v. State,* 716 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1986, pet. ref'd).

■ Appellant also argues that he received ineffective assistance of counsel because his attorney failed to request these lesser-included offenses. The accused is entitled to a charge on a lesser-included offense if he shows that 1) the lesser offense is included within the proof necessary to establish the offense charged, and 2) evidence exists in the record to prove that if he is guilty, he is guilty only of the lesser-included offense. *Kinnamon,* 791 S.W.2d at 96; *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim. App.1981) (Opin. on Reh'g).

■ When evaluating trial counsel's performance, we apply the *Strickland v. Washington* test,[2] determining whether counsel's performance was deficient to the extent that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 686–95, 104 S.Ct. at 2064–68; *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim.App.1986); *Dedesma v. State,* 806 S.W.2d 928, 935 (Tex.App.—Corpus Christi 1991, pet. ref'd). We next determine whether counsel's deficient performance prejudiced appellant's defense, depriving him of a fair trial to the extent that but for counsel's

---

**2.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 686–95, 104 S.Ct. at 2064–68; *Hernandez,* 726 S.W.2d at 57; *Dedesma,* 806 S.W.2d at 935.

■ Judicial scrutiny of counsel's performance must be highly deferential;[3] trial strategy must be considered a valid rationale for a particular action, and counsel's decisions will not be second-guessed.[4]

■ The record shows that appellant's counsel had a strategy in not requesting lesser-included offenses be submitted to the jury. Counsel determined that the State had failed to prove every element of the specific crime with which appellant had been charged, that is, murder. In particular, counsel determined that Garcia's testimony regarding the accidental firing of the weapon, in conjunction with appellant's panicked state, would leave reasonable doubt in the jurors' minds. The request for an instruction on involuntariness, as discussed above, is evidence of this.

At the close of the evidence in this case, appellant's counsel moved for an instructed verdict on the grounds that the State failed to raise evidence that appellant intentionally or knowingly shot the victim. Of particular note is counsel's argument to the court,

> The State could have ... very easily when they presented this case to the indictment presented other offenses, other lesser type of offenses, such as recklessness, all right, such as voluntary manslaughter, involuntary manslaughter, criminal negligent homicide, you know, all the way down to assault.
>
>    *    *    *    *    *    *
>
> So to the extent they didn't do that, all right, they're married to what they have alleged in the indictment. And they have alleged the most serious type of offense, which is premeditated murder, ... a culpable mental state which they have wholly failed to prove in that regard.[5]

The defense's theory of the case was that appellant accidentally shot the victim, lacking any culpable mental state whatsoever. Before the jury, defense counsel argued repeatedly the absence of evidence that the shooting was intentional and knowing, as must be found in order to convict, because there were no lesser crimes charged. Counsel chose not to request lesser-included offenses upon which the jury could find appellant guilty. He required the jury to opt between murder, an intentional or knowing act, and acquittal. Such a decision, although risky, is sometimes successful. We cannot say that such a tactic was so unreasonable under the facts of the case that it denied appellant the effective assistance of counsel. Appellant's points of error four and five are overruled.

■ By point of error two, appellant contends that the trial court erroneously allowed into evidence a pistol that was admittedly not the one used in the killing. The State justifies its admission to demonstrate the characteristics of the weapon used in the killing to refute the claim of accidental firing.

To be admissible, evidence must be relevant. Evidence is relevant if it has a tendency to make any fact of consequence more or less probable. TEX.R.CRIM.EVID. 401, 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or other concerns. TEX.R.CRIM.EVID. 403.

The pistol used in this murder was apparently the victim's own. He was a gun collector, and the weapon at issue was the only one missing after the killing. The weapon was a Colt Trooper double-action revolver in .357 magnum calibre with a six-inch barrel. After the murder the gun was never found, and the prosecution sponsored into evidence another Colt Trooper double-action revolver in the same calibre, testified as being identical to the victim's, except the offered pistol had a four-inch barrel. No evidence existed re-

---

3. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065; *Hernandez v. State,* 799 S.W.2d 507, 508 (Tex. App.—Corpus Christi 1990, pet. ref'd).

4. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

5. After the trial court denied counsel's motion for instructed verdict, counsel requested that the voluntariness instruction be included.

garding whether the weapon was fired that fatal night from a single-action or double-action mode, but there was evidence that the force required to pull the trigger was much less when the weapon was fired single-action. The victim's brother testified he was familiar with the victim's Colt Trooper, had shot it many times, and knew that his brother had never had the trigger pull altered.

The critical issue at trial was whether the shooting was accidental or willful. The force required to fire the gun is a factor in determining whether the discharge of the firearm was the result of a conscious, willful act or was inadvertent. The jury was allowed to feel the trigger pull of a pistol almost identical to the one used in the killing to aid it in deciding that issue.

The pistol was admitted for demonstrative purposes and was relevant. *See Simmons v. State,* 622 S.W.2d 111, 113 (Tex.Crim.App. 1981); *Reyna v. State,* 797 S.W.2d 189, 193 (Tex.App.—Corpus Christi 1990, no pet.); *Perez v. State,* 674 S.W.2d 851, 854 (Tex. App.—Corpus Christi 1984, no pet.).[6] Its relevance was not outweighed by a danger of undue prejudice or other considerations. Point of error two is overruled.

By point of error three, appellant contends that the trial court erred by denying his motion for a mistrial after evidence of an extraneous offense was submitted to the jury. Officer Jaime Davila, one of the investigating officers on this case, was asked how the San Juan police department came to find the appellant in Houston. He answered,

Information was given to us sometime prior to the 21st day of, I believe it was, March or April after the incident had taken place that this Defendant, Carroll Ray Lynn, Jr., had been arrested in the Houston area somewheres for shoplifting or something to that effect.

Appellant objected to this testimony, and a bench discussion was held. Appellant contended that the introduction of this extraneous evidence violated his motion in limine. The witness was taken on voir dire, outside the presence of the jury, and he explained

that, first, he was mistaken when he stated that the police received their information in March or April. He conceded that the information was received in May. He then stated that he mentioned the offense because the San Juan police department had received a call that the appellant had been "picked up for some offense ... and was transferred to one of the jails there in Houston ... about ten days or so after" the victim in this case was shot. That is how the police department came to locate the appellant.

The jury returned to the courtroom, and appellant's counsel took Officer Davila on voir dire in their presence. The following is their exchange:

Q: Officer Davila, the fact of the matter is that the information that you received is that Mr. Lynn was detained in the Houston area; isn't that right, sir?

A: That's correct, sir.

Q: And this business that you blurted out about him being shoplifting and he was arrested for shoplifting, you have no personal knowledge of that; is that true?

A: No personal knowledge, no.

Q: And, in fact, that information is based on hearsay information that you heard from somebody; isn't that true?

A: That's correct.

Q: As a matter of fact, you have no personal knowledge whether Mr. Lynn was actually charged formally for any offense up in Houston; is that right, sir?

A: That is correct.

Appellant then moved that the jury be instructed to disregard Davila's statement made before they were excused, and the trial court granted the motion. Appellant's motion for a mistrial was denied.

Appellant contends that the introduction of that possible offense was a violation of his motion in limine, as well as inadmissible hearsay. Generally, a trial court's instruction to disregard certain testi-

---

6. *See also Jackson v. State,* 772 S.W.2d 459, 466 (Tex.App.—Beaumont 1989, no pet.) (pistol); *Po-*

sey *v. State,* 763 S.W.2d 872, 875 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd) (knife).

mony is presumed to be followed by the jury. *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim. App.1987). Except in extreme cases, if the trial court instructs the jury to disregard an improper response referencing an extraneous offense, the error is cured. *Moody v. State,* 827 S.W.2d 875, 890 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); *Barney v. State,* 698 S.W.2d 114, 125 (Tex.Crim.App.1985); *Barnhill v. State,* 779 S.W.2d 890, 891 (Tex.App.— Corpus Christi 1989, no pet.). This rule is true even when a motion in limine has been violated. *Barney,* 698 S.W.2d at 125; *Barnhill,* 779 S.W.2d at 891.

The State argues that in this case, whether the appellant shot the victim was not in dispute; rather, the question was whether the appellant acted with knowledge and intent. The possible commission of a minor offense by the appellant would shed no light on the voluntariness issue. As such, this is not an extreme case in which error could not be cured by a limiting instruction. Moreover, appellant himself helped to cure the error by assailing, through voir dire, the weight to be given the officer's testimony. Point of error three is overruled.

The judgment of the trial court is AFFIRMED.

NYE, C.J., not participating.