# NO. 12-07-00266-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRANDON JAYVORIS MAYFIELD,* <br> *APPELLANT* | § | *APPEAL FROM THE 188TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Brandon Jayvoris Mayfield appeals his conviction for murder, for which he was sentenced to imprisonment for ninety-nine years and fined ten thousand dollars. Appellant raises six issues on appeal. We affirm.

### BACKGROUND

Appellant was charged with the capital murder and murder of Pedro Santos. Appellant admitted that he was present when an incident involving Santos occurred. However, the specifics of the incident, as recounted by Appellant and Santos's wife, Mary Colbert, vary greatly.

According to Colbert, late one evening, she was leaving her home on Noel Street in Longview, Texas to go to work. She told her husband goodbye and opened the front door where she saw two men. One of the men, who was wielding a gun, approached Colbert and made her go back inside the house. Once inside, one of the men went to the back of the house and confronted Santos. The man asked Santos if he remembered him. Santos said that he did. The man began to beat Santos about the head with the gun, eventually causing Santos to fall to the ground. As Santos began

to stand up, the man again hit Santos with the gun. When he did this, the gun discharged, and the bullet struck the attacker. The two men left, taking Colbert's purse and cell phone with them.

According to Appellant, Demetrick Christian, who sold drugs with Appellant, knew Santos and wanted to conduct a drug transaction with him. Appellant did not know Santos. Christian met Appellant at the home of Appellant's half brother, Brad Simmons. Knowing that he was going with Christian to conduct a drug transaction, Appellant obtained a gun from Simmons, who then drove Appellant and Christian to Noel Street. Christian and Appellant exited the vehicle, and Simmons drove the vehicle around while he waited for them to return. Christian took Appellant's gun from him and knocked on Santos's door. Christian went into the house first and advised Appellant to enter the house. Appellant entered the house and waited in the living room near Colbert. Christian and Santos were in a hallway near the bathroom. Appellant overheard Christian and Santos arguing and decided to leave. Before he left, Appellant sought to retrieve his gun from Christian. When Christian tried to give Appellant the gun, Santos reached for it. In response, Christian hit Santos with the gun. As Christian and Santos continued to fight, the gun discharged and a round struck Appellant. Appellant immediately exited the house. Christian followed a few moments later.

Appellant and Christian reentered Simmons's vehicle, and Simmons drove Appellant to the hospital. When they arrived at the hospital, Christian and Simmons claimed that Appellant had been shot on Eckman Street. However, the police subsequently learned that the shooting occurred on Noel Street. Appellant was treated for his injuries.

Meanwhile, Colbert called the police. When the police arrived, Santos was conscious and told them that two men had attacked him. Santos also told the police that he had been shot three times. Colbert spoke to the police as well. She told the police that she heard a noise outside and when she opened the door, she saw two men, one of whom had a gun. She also told one of the officers that one of the men made her lie down in the living room and that she could not see the struggle between Santos and the other man.

Santos received treatment for his injuries. Unfortunately, his condition worsened, and he did not survive. The doctors determined that Santos's death was caused by blunt force trauma to the head.

Appellant was charged with capital murder and murder and pleaded "not guilty." The case

2

proceeded to a jury trial. Ultimately, the jury found Appellant guilty of murder and assessed Appellant's punishment at imprisonment for ninety-nine years and a fine of ten thousand dollars. The trial court sentenced Appellant accordingly, and this appeal followed.

**EVIDENTIARY SUFFICIENCY**

In his first, second, and third issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, Appellant argues that the evidence is insufficient to establish that (1) Santos's death was a result of his being struck on the head by either Appellant or Christian and that (2) Appellant possessed the requisite culpable mental state necessary for murder.

**Standard of Review**

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

In reviewing factual sufficiency, we consider all the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Id.*; *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso

3

1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); *Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

Under either the legal sufficiency or factual sufficiency standard, our role is that of appellate review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614.

Moreover, the legal and factual sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Wooley v. State*, No. PD-0861-07, 2008 WL 2512843, at *6 (Tex. Crim. App. June 25, 2008). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)(Vernon 2003).

**Legal Sufficiency**

We first consider Appellant's contention that the evidence is legally insufficient. Colbert testified that Appellant spoke to Santos and then almost immediately began striking him with the gun. Santos's blood splattered all over the bathroom walls and floor, yet Appellant continued striking him. Santos collapsed as a result of the beating, but when Santos attempted to stand up, Appellant struck him again. Only after the gun discharged and Appellant was struck by the bullet did he stop beating Santos. Further, Santos's treating physicians and the medical examiner testified

4

that Santos died from blunt force trauma to the head.

Viewing the aforementioned evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably determined that Appellant repeatedly struck Santos with the gun and the injuries resulting from that attack caused Santos's death. Therefore, we hold that the evidence was legally sufficient to support the jury's verdict.

**Factual Sufficiency**

Turning to Appellant's factual sufficiency contentions, our review of the entirety of the record reveals some evidence that is contrary to the verdict. Specifically, we note that Appellant's testimony offers a completely different account of the incident. According to Appellant, the events that day were best described as a drug deal that turned sour. And while Appellant claimed that Christian did, in fact, hit Santos with the gun, he also testified that he did not see Santos bleeding. Further, Colbert's initial statement to the police indicated that she could not see the attack. Finally, Appellant argues that a note from the jurors indicates that they were having difficulty determining whether Appellant had the requisite culpability in committing the crime.

Nonetheless, we must consider such evidence in the context of the record as a whole. Generally, it is for the jury to determine the weight to be afforded to the testimony of a witness and to resolve any conflicts in the evidence. *See Wesbrook*, 29 S.W.3d at 111 (Tex. Crim. App. 2000); *see also Watson*, 204 S.W.3d at 409. The jury was entitled to believe Colbert's testimony and disbelieve Appellant's testimony. *See, e.g., Thompson v. State*, 54 S.W.3d 88, 97 (Tex. App.–Tyler 2001, pet. ref'd) (jury entitled to find that one witness was more credible than another or that one witness's version of the story was a more accurate account than the version of the story offered by another witness). Appellant's conduct, as described by Colbert, provides circumstantial evidence that Appellant knowingly or intentionally caused Santos's death.

Our review of the record as a whole, with consideration given to all of the evidence both for and against the jury's finding, has not caused us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the jury's verdict.

Appellant's first, second, and third issues are overruled.

## VIOLATION OF THE RULE

In his fourth issue, Appellant claims that the trial court reversibly erred when it permitted the testimony of a witness who had violated Texas Rule of Evidence 614, which is commonly referred to as "the rule."

Rule 614 provides that the court shall, at the request of a party, order witnesses excluded so that they cannot hear the testimony of other witnesses. *See* TEX. R. EVID. 614. Unless he falls within one of the exceptions to the rule, a witness who enters the courtroom while another witness is testifying violates the rule. *Id*. The purpose of the rule is to "prevent the testimony of one witness from influencing the testimony of another, consciously or not." *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005).

When a witness violates the rule, the trial court has discretion in determining whether the witness's testimony should be excluded. *Guerra v. State*, 771 S.W.2d 453, 475 (Tex. Crim. App. 1988). Unless an abuse of discretion is shown, the trial court's decision will not be reversed. *Id*. If the rule was violated by a witness the party clearly anticipated calling to the stand, in determining whether to exclude the witness's testimony, the trial court first determines whether the witness actually heard the testimony or conferred with another witness without court permission. *Id.* at 474. The trial court next considers whether the witness's testimony either (1) contradicts the testimony of a witness he actually heard from the opposing side or (2) corroborates the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence. *Id.*

Here, Simmons testified for the State. After the rule had been invoked, but before Simmons testified, he entered the courtroom. While Simmons was in the courtroom, one of the investigating officers was testifying on behalf of the State regarding his investigation of the crime scene. However, Simmons did not testify with regard to the crime scene because he did not enter Santos's house. Instead, Simmons testified about his providing Appellant a gun and his giving Appellant and Christian a ride to Santos's house and, thereafter, to the hospital. Because Simmons's testimony did not corroborate the testimony he overheard, we hold that the trial court did not abuse its discretion in permitting Simmons to testify. Appellant's fourth issue is overruled.

6

## JURY MISCONDUCT

In his fifth issue, Appellant contends that there was an instance of jury misconduct indicated by a note the jury made to the trial court during its deliberations on Appellant's guilt or innocence.

During deliberations, the jury sent the trial court a note that asked, among other things, "does the definition of murder require intent to kill" and "if someone dies while a felony is committed, even if not by intent, is this capital murder." In response to these questions, the trial court told the jury, "[Y]ou will be governed by the instructions and definitions given to you in the Charge." Appellant did not object to the trial court's response.

The jury's note to the trial court is the sole evidence Appellant raises in support of his jury misconduct issue. As such, the record establishes that the jury was instructed to base its decision on the instructions and definitions given in the court's charge. Those instructions accurately set out the law, including the culpability required to find Appellant guilty of murder. "We presume that jurors follow the instructions." *Lucero v. State*, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008). Therefore, we hold that the record does not support Appellant's contention that there was jury misconduct in this case. Appellant's fifth issue is overruled.

## SUA SPONTE INSTRUCTIONS ON LESSER INCLUDED OFFENSES

In his sixth issue, Appellant argues that the manner in which the jury was charged amounts to reversible error. Specifically, Appellant contends that once the trial court received the note from the jury questioning the definition of intent, it should have charged the jury concerning manslaughter and criminally negligent homicide. Appellant admits that he did not object to the trial court's response to the jury's question. Further, Appellant never requested that the trial court charge the jury on manslaughter or criminally negligent homicide.

Upon the defendant's request, a trial court must include a lesser included offense instruction in the jury charge if the requested charge is for a lesser included offense of the charged offense and there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). However, the defendant must first request an instruction. *See id.* Here, no such request was made.

Appellant acknowledges in his brief that he failed to request an instruction on these lesser

included offenses, but argues that the trial court's failure to sua sponte instruct the jury in this regard amounted to "egregious harm." When an appellant fails to object to the charge at trial, he must show egregious harm to prevail on appeal. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo*, 175 S.W.3d at 743 (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). "[T]o determine whether the error was so egregious that a defendant was denied a fair and impartial trial, a reviewing court should examine: (1) the entire jury charge; (2) the state of the evidence; (3) the arguments of counsel; and (4) any other relevant information in the record." *Id.* at 750 n.48; *Almanza*, 686 S.W.2d at 171.

Appellant bases his contention on the aforementioned note from the jury to the trial court and argues that the trial court should have given the lesser included offense instruction "since it was apparent from the jury's questions that the jury had rejected the culpable mental states of intentional and knowing[ ] and was considering homicide under a lesser degree of culpable mental state." The trial court has the duty and responsibility to instruct the jury on the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). Thus, in discharging this duty, the trial court is authorized to sua sponte include a charge on a lesser included offense if the charge meets the two part test set forth in *Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993). *See Ford v. State*, 38 S.W.3d 836, 840, 841–42 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd). Generally, however, it is the defendant who affirmatively requests or objects to a charge regarding a lesser included offense as a matter of trial strategy. *Walton v. State*, No. 14-06-00227-CR, 2007 WL 706582, at *1 (Tex. App.–Houston [14th Dist.] Mar. 8, 2007, pet. ref'd) (mem. op., not designated for publication). Here, Appellant arguably had at least two opportunities—both before the charge was submitted to the jury and when asked if he had any objection to the trial court's response to the jury's note—to object to the court's charge and request an instruction on lesser included offenses. In both instances, Appellant declined to make such a request.

Judicial scrutiny of counsel's performance must be highly deferential; trial strategy must be considered a valid rationale for a particular action, and counsel's decisions will not be second guessed. *See Lynn v. State*, 860 S.W.2d 599, 603 (Tex. App.–Corpus Christi 1993, pet. ref'd). It

8

is not uncommon for counsel to employ an "all or nothing" tactic. ***Wood v. State***, 4 S.W.3d 85, 88 (Tex. App.–Fort Worth 1999, pet. ref'd). Such a decision, although risky, is sometimes successful. ***Lynn***, 860 S.W.2d at 603. In the instant case, it is apparent from the record, that while the court's charge was not representative of a classic "all or nothing" tactic with regard to the instructions submitted, we are no less inclined to conclude that there existed a possibility that Appellant's strategy for his defense was to limit the offenses the jury could consider to the ones requiring a higher degree of culpable mental state. The trial court gave Appellant at least two opportunities to decide differently. Yet the record supports that Appellant chose to limit the jury's decision to finding him guilty of capital murder or murder based either on intentional or knowing conduct,[1] or to acquit him. Under the charge given to the jury, a finding that Appellant acted recklessly or with criminal negligence alone would not be enough to convict. Thus, we conclude that it would be inappropriate for the trial court to decide trial strategy for the defense. *See, e.g.,* ***Walton***, 2007 WL 706582, at *2. Therefore, we hold that the trial court did not err by declining to sua sponte instruct the jury concerning the lesser included offenses of manslaughter or criminally negligent homicide. Appellant's sixth issue is overruled.

### DISPOSITION

Having overruled Appellant's six issues, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered December 17, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[1] The issue of capital murder, which was submitted to the jury, is, in this instance, based on the issue of whether Appellant, either individually or as a party to Christian's conduct, is guilty of intentional conduct committed while in the course of committing a robbery. *See* TEX. PENAL CODE ANN. 19.03(a)(2) (Vernon Supp. 2008). The issue of murder, which was also submitted to the jury, is based on the issue of whether Appellant, either individually or as a party to Christian's conduct, is guilty of intentionally or knowingly causing Santos's death. *See* TEX. PENAL CODE ANN. 19.02(b)(1).