

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-09-048-CR

TED NEAL BISHOP                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Ted Neal Bishop guilty of the offense of graffiti causing pecuniary loss of between $1,500 and $20,000, and the trial court sentenced him to 365 days' imprisonment and a $500 fine. The trial court suspended imposition of the jail portion of the sentence and placed Bishop on

---

[1] See Tex. R. App. P. 47.4.

two years' community supervision. In two issues, Bishop argues that the evidence was legally and factually insufficient to support his conviction and that his defense counsel was ineffective. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Janice Cranford owns an antique store in downtown Electra. She purchased the lot and building where she operates the antique store from Shirley Craighead in 2006. Bishop owns the vacant lot immediately to the north of Cranford's lot. When Cranford purchased her property in 2006, she made extensive repairs to the building, including resurfacing the exterior of the north wall—the wall that faces Bishop's property. She requested and received permission from Bishop to go onto his property to resurface that wall.

On November 2, 2007, Bishop went to the Electra Police Department to complain about people removing his no trespassing signs from his vacant lot. He wanted Electra's Chief of Police Johnny Morris to find out who was removing the signs. Bishop told Chief Morris that "he wanted that pervert to keep off of his property" and that he was "going to go get a can of black spray paint and spray something" on the north wall of Cranford's antique store because "it's his wall." Chief Morris advised against spray painting the wall because it belonged to Cranford. Bishop left the police department and drove towards his home. Later that evening, Chief Morris saw Bishop driving in the

2

general direction of his vacant lot and Cranford's property. Chief Morris drove to Cranford's and Bishop's properties and saw that the north wall of Cranford's building—the wall facing Bishop's vacant lot—had been spray painted with the words "ALERT PERVERT AREA," "Do Not Enter," and "Stay out." Cranford received a bid for $2,457 from plasterer Bryan Davidson to repair the wall to cover up the spray paint.

## III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Bishop argues that the evidence is legally and factually insufficient to sustain his conviction for the offense of graffiti because the State failed to prove that Cranford owned the wall that he had spray painted. He argues that the evidence demonstrates that two walls separate his property from Cranford's property and that he owns one of them—the one that he had spray painted.

### A. Standards of Review

#### 1. Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v.*

3

*Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## 2. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor

of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's

complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## B. Elements of the Offense of Graffiti

A person commits an offense if he (1) intentionally or knowingly makes markings (2) on the tangible property of another person (3) without the effective consent of the owner (4) with paint, an indelible marker, or an etching or engraving device. Tex. Penal Code Ann. § 28.08(a) (Vernon Supp. 2009). If the amount of pecuniary loss is $1,500 or more but less than $20,000, the offense is a state jail felony. *Id.* § 28.08(b)(3).

The penal code defines an "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *See* Tex. Penal Code Ann. § 1.07(a)(35) (Vernon Supp. 2009).

## C. Legally Sufficient Evidence

Here, the evidence at trial demonstrated that Cranford owns the southern twenty-five feet of lots 10, 11, and 12 and that Bishop owns the center twenty-five feet of lots 10, 11, and 12. The evidence also demonstrated that Bishop purchased the property as a vacant lot and that Cranford purchased her property with a building on it. Shirley Craighead testified when she sold Cranford the property in 2006, she "sold her a building" and that buildings

7

come with walls. Craighead testified that when she owned the property, she and Bishop never had any agreement that Bishop owned part of the walls of her building. Cranford testified that she never had an agreement with Bishop, or any notice, that the wall in question belonged to Bishop. She also testified that she did not give Bishop permission to spray paint the wall.

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found that the evidence at trial was sufficient to establish that Cranford has title to the wall, possession of the wall, whether lawful or not, or a greater right to possession of the wall than Bishop. *See* Tex. Penal Code Ann. § 1.07(a)(35); *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support Bishop's conviction.

### D. Factually Sufficient Evidence

Bishop argues that no rational juror could have found that he was not the owner of the wall. He points to evidence presented at trial that a dispute existed about the boundary of his property and that the wall that he had spray painted was actually a remnant of a building that once existed on his now-vacant lot, rather than a wall to Cranford's building.

Specifically, Paul Hayers testified that he is the City Attorney for Electra and that he had prepared the deed from Craighead to Cranford in 2006. He

8

testified that, prior to Bishop's purchase the vacant lot, "somebody made a mistake at some point" in the legal description of that property. Roy Woodman, a land surveyor, testified that he had surveyed Bishop's property and had determined that the boundary line of that property is located approximately seven-tenths of a foot inside the wall of the building on Cranford's lot.

Regarding evidence of the second wall, Cranford testified that the color of the brick on the front of her building is a different color than the brick on the north wall that faces Bishop's property. Davidson testified that holes in the north wall are consistent with rafters or roof beams. Woodman explained that the width of the overlap between the boundary of Bishop's property line and the north wall is approximately the length of one brick. The most significant evidence supporting Bishop's argument is a discrepancy in the tax appraisal records for Bishop's property. The State introduced tax appraisal records from the Wichita County Appraisal District for Cranford's and Bishop's properties. The record for Bishop's property shows that he owns a vacant lot, and the comments section of the record is blank. Lisa Musick, the deputy chief appraiser for the appraisal district, testified that structures that add value to an appraised property are included in an appraisal but that structures that do not add value to the property are not included in an appraisal and are, instead, typically noted in the comments section. On cross-examination, Musick

9

testified that the tax appraisal record for Bishop's property used to include the following notation in the comments section: "A recent survey indicates side wall units attached to adjacent buildings on this parcel. No conclusive evidence of who is the owner of the walls. . . ." A copy of the prior version of the tax appraisal record for Bishop's property that included this notation was introduced at trial. Musick testified that "at some point in time someone . . . involved in this case [came] into our office and talked to an appraiser." Afterwards, Musick removed the comment from the tax appraisal record for Bishop's property because the comment was not in the correct place, and she "moved it into the appropriate place in [the appraisal district's] computer system."

We have considered the evidence in a neutral light, favoring neither party. *See Steadman*, 280 S.W.3d at 242; *Watson*, 204 S.W.3d at 414. Notwithstanding evidence of the boundary dispute and of a second wall, the evidence also showed that Cranford purchased a lot with a building, whereas Bishop purchased a vacant lot. The evidence also demonstrated that Cranford had previously asked for and had received Bishop's permission to go onto his property to repair the exterior of the north wall—the wall that Bishop now claims to own. Proof of ownership, which may be decided by direct or circumstantial evidence, was an issue for the jury to decide. *Robertson v. State*, 871 S.W.2d 701, 707 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S.

853 (1994); *Liggens v. State*, 50 S.W.3d 657, 660 (Tex. App.—Fort Worth 2001, pet. ref'd). The jury could have determined that Cranford had title to the wall, possession of the wall, whether lawful or not, or a greater right to possession of the wall than Bishop.[2] *See* Tex. Penal Code Ann. § 1.07(a)(35); *Lancon*, 253 S.W.3d at 706; *Robertson*, 871 S.W.2d at 707; *Liggens*, 50 S.W.3d at 660; *see also Fuentes v. State*, 991 S.W.2d 267, 271–72 (Tex. Crim. App.) (noting that "to avoid intruding on the jury's role as arbiter of the weight and credibility of the evidence, a factual sufficiency review remains deferential to the jury's verdict"), *cert. denied*, 528 U.S. 1026 (1999).

We cannot say that the evidence supporting Bishop's conviction was so weak that the jury's determination was clearly wrong or manifestly unjust or that it was contradicted by the great weight and preponderance of the evidence. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. We hold that the evidence presented at trial was sufficient to support the verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Bishop's conviction.

---

[2] The jury charge included the penal code's definition of an "owner." *See* Tex. Penal Code Ann. § 1.07(a)(35).

11

Having held that the evidence is legally and factually sufficient, we overrule Bishop's first issue.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Bishop argues that his counsel was ineffective for not requesting a jury instruction on the lesser included offense of Class B misdemeanor graffiti, or graffiti causing pecuniary loss of less than $500. *See* Tex. Penal Code Ann. § 28.08(b)(1). He argues that Davidson's testimony that he could repair the wall for as little as $450 supported this instruction.[3]

### A. Standard of Review

We apply a two-pronged test to ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms

---

[3] [...] Davidson testified on cross-examination that if he simply painted over the spray-painted area of the wall with paint that matched the existing wall color without repainting and retexturing the entire wall, he would charge approximately $450. He testified that his professional opinion, however, is that the entire wall should be repainted and refinished and that it would be "very obvious" if someone simply painted over the spray-painted area.

12

and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 62–63; *Thompson*, 9 S.W.3d at 812.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged

13

ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

B. Law on Failure to Request Lesser Included Offense Instruction

Defense counsel's failure to request a jury instruction can render his assistance ineffective if, under the particular facts of the case, the trial judge would have erred in refusing the instruction had counsel requested it. *See Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992); *Wood v. State*, 4 S.W.3d 85, 87 (Tex. App.—Fort Worth 1999, pet. ref'd). However, it may be reasonable trial strategy not to request a charge on a lesser-included

14

offense. *See Lynn v. State*, 860 S.W.2d 599, 603 (Tex. App.—Corpus Christi 1993, pet. ref'd). The defendant bears the burden of rebutting the strong presumption that, under the circumstances, counsel's decision not to request the instruction was sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065); *Wood*, 4 S.W.3d at 87. Thus, the accused must provide a record on appeal from which the reviewing court can determine that trial counsel's performance was not based on sound strategy. *See Jackson*, 877 S.W.2d at 771–72.

### C. Counsel Was Not Ineffective

Here, the record from the charge conference shows that defense counsel was employing an "all or nothing" strategy by not requesting a lesser included offense instruction on misdemeanor graffiti. This decision was also consistent with Bishop's primary defensive theory—that he owned the wall that he had spray-painted and that, consequently, he could not be guilty of graffiti.

At the charge conference, the State and defense counsel discussed whether Bishop would request a lesser included offense instruction. Defense counsel stated that although "some trial lawyers would" request such an instruction, he had discussed it with Bishop and had decided against requesting a lesser included offense instruction. He stated, "It's been a very difficult

15

decision, but this whole case has been prosecuted as a felony only from the get-go." Moreover, Bishop did not file a motion for new trial, and the record is otherwise silent on trial counsel's reasoning. Because the record demonstrates that defense counsel was aware of the availability of a lesser included offense instruction and made a strategic decision not to request it, we cannot say that his decision was anything other than sound trial strategy. *See Sendejo v. State*, 26 S.W.3d 676, 678–80 (Tex. App.—Corpus Christi 2000, pet. ref'd) (finding defense counsel not ineffective when he knew instruction was available but chose to "roll the dice" by not requesting it, consistent with his defensive theory); *Lynn*, 860 S.W.2d at 603 ("Such a decision, although risky, is sometimes successful.").

Based on the record before us, in light of the strong presumption of reasonable professional assistance by defense counsel, we hold that Bishop has not met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Thompson*, 9 S.W.3d at 813. We overrule Bishop's second issue.

16

V. CONCLUSION

Having overruled Bishop's two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DATE:  April 8, 2010

17