NO. 12-07-00266-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


BRANDON JAYVORIS MAYFIELD,
§
 APPEAL FROM THE 188TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS

 

MEMORANDUM OPINION


 Brandon Jayvoris Mayfield appeals his conviction for murder, for which he was sentenced
to imprisonment for ninety-nine years and fined ten thousand dollars. Appellant raises six issues on
appeal. We affirm.


Background


 Appellant was charged with the capital murder and murder of Pedro Santos. Appellant
admitted that he was present when an incident involving Santos occurred. However, the specifics
of the incident, as recounted by Appellant and Santos's wife, Mary Colbert, vary greatly.

 According to Colbert, late one evening, she was leaving her home on Noel Street in
Longview, Texas to go to work. She told her husband goodbye and opened the front door where she
saw two men. One of the men, who was wielding a gun, approached Colbert and made her go back
inside the house. Once inside, one of the men went to the back of the house and confronted Santos. 
The man asked Santos if he remembered him. Santos said that he did. The man began to beat
Santos about the head with the gun, eventually causing Santos to fall to the ground. As Santos began
to stand up, the man again hit Santos with the gun. When he did this, the gun discharged, and the
bullet struck the attacker. The two men left, taking Colbert's purse and cell phone with them.

 According to Appellant, Demetrick Christian, who sold drugs with Appellant, knew Santos
and wanted to conduct a drug transaction with him. Appellant did not know Santos. Christian met
Appellant at the home of Appellant's half brother, Brad Simmons. Knowing that he was going with
Christian to conduct a drug transaction, Appellant obtained a gun from Simmons, who then drove
Appellant and Christian to Noel Street. Christian and Appellant exited the vehicle, and Simmons
drove the vehicle around while he waited for them to return. Christian took Appellant's gun from
him and knocked on Santos's door. Christian went into the house first and advised Appellant to
enter the house. Appellant entered the house and waited in the living room near Colbert. Christian
and Santos were in a hallway near the bathroom. Appellant overheard Christian and Santos arguing
and decided to leave. Before he left, Appellant sought to retrieve his gun from Christian. When
Christian tried to give Appellant the gun, Santos reached for it. In response, Christian hit Santos
with the gun. As Christian and Santos continued to fight, the gun discharged and a round struck
Appellant. Appellant immediately exited the house. Christian followed a few moments later.

 Appellant and Christian reentered Simmons's vehicle, and Simmons drove Appellant to the
hospital. When they arrived at the hospital, Christian and Simmons claimed that Appellant had been
shot on Eckman Street. However, the police subsequently learned that the shooting occurred on
Noel Street. Appellant was treated for his injuries.

 Meanwhile, Colbert called the police. When the police arrived, Santos was conscious and
told them that two men had attacked him. Santos also told the police that he had been shot three
times. Colbert spoke to the police as well. She told the police that she heard a noise outside and
when she opened the door, she saw two men, one of whom had a gun. She also told one of the
officers that one of the men made her lie down in the living room and that she could not see the
struggle between Santos and the other man.

 Santos received treatment for his injuries. Unfortunately, his condition worsened, and he did
not survive. The doctors determined that Santos's death was caused by blunt force trauma to the
head.

 Appellant was charged with capital murder and murder and pleaded "not guilty." The case
proceeded to a jury trial. Ultimately, the jury found Appellant guilty of murder and assessed
Appellant's punishment at imprisonment for ninety-nine years and a fine of ten thousand dollars. 
The trial court sentenced Appellant accordingly, and this appeal followed.


Evidentiary Sufficiency

 In his first, second, and third issues, Appellant contends that the evidence is legally and
factually insufficient to support his conviction. Specifically, Appellant argues that the evidence is
insufficient to establish that (1) Santos's death was a result of his being struck on the head by either
Appellant or Christian and that (2) Appellant possessed the requisite culpable mental state necessary
for murder.

Standard of Review

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is
whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's
verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful
legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. See Tibbs
v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). 

 In reviewing factual sufficiency, we consider all the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to
disprove that fact. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we
are authorized to disagree with the jury's determination, even if probative evidence exists that
supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole
judge of the weight and credibility of witness testimony. Id.; see Clewis v. State, 922 S.W.2d 126,
133 (Tex. Crim. App. 1996). Where there is conflicting evidence, the jury's verdict on such matters
is generally regarded as conclusive. Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso
1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary
evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly
wrong and manifestly unjust." Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see also
Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); Sims v. State, 99 S.W.3d 600, 601
(Tex. Crim. App. 2003).

 Under either the legal sufficiency or factual sufficiency standard, our role is that of appellate
review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. 
Wesbrook v. State, 29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000). The fact finder may choose to
believe all, some, or none of a witness's testimony. Sharp v. State, 707 S.W.2d 611, 614.

 Moreover, the legal and factual sufficiency of the evidence is measured against the elements
of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997); see Wooley v. State, No. PD-0861-07, 2008 WL 2512843, at *6 (Tex.
Crim. App. June 25, 2008). Such a charge would include one that "accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Malik, 953 S.W.2d at 240.

 A person commits the offense of murder if he intentionally or knowingly causes the death
of an individual. Tex. Penal Code Ann. § 19.02(b)(1)(Vernon 2003).

Legal Sufficiency

 We first consider Appellant's contention that the evidence is legally insufficient. Colbert
testified that Appellant spoke to Santos and then almost immediately began striking him with the
gun. Santos's blood splattered all over the bathroom walls and floor, yet Appellant continued
striking him. Santos collapsed as a result of the beating, but when Santos attempted to stand up,
Appellant struck him again. Only after the gun discharged and Appellant was struck by the bullet
did he stop beating Santos. Further, Santos's treating physicians and the medical examiner testified
that Santos died from blunt force trauma to the head.

 Viewing the aforementioned evidence in the light most favorable to the jury's verdict, we
conclude that the jury could have reasonably determined that Appellant repeatedly struck Santos with
the gun and the injuries resulting from that attack caused Santos's death. Therefore, we hold that
the evidence was legally sufficient to support the jury's verdict.

Factual Sufficiency

 Turning to Appellant's factual sufficiency contentions, our review of the entirety of the
record reveals some evidence that is contrary to the verdict. Specifically, we note that Appellant's
testimony offers a completely different account of the incident. According to Appellant, the events
that day were best described as a drug deal that turned sour. And while Appellant claimed that
Christian did, in fact, hit Santos with the gun, he also testified that he did not see Santos bleeding. 
Further, Colbert's initial statement to the police indicated that she could not see the attack. Finally,
Appellant argues that a note from the jurors indicates that they were having difficulty determining
whether Appellant had the requisite culpability in committing the crime.

 Nonetheless, we must consider such evidence in the context of the record as a whole.
Generally, it is for the jury to determine the weight to be afforded to the testimony of a witness and
to resolve any conflicts in the evidence. See Wesbrook, 29 S.W.3d at 111 (Tex. Crim. App. 2000);
see also Watson, 204 S.W.3d at 409. The jury was entitled to believe Colbert's testimony and
disbelieve Appellant's testimony. See, e.g., Thompson v. State, 54 S.W.3d 88, 97 (Tex. App.-Tyler
2001, pet. ref'd) (jury entitled to find that one witness was more credible than another or that one
witness's version of the story was a more accurate account than the version of the story offered by
another witness). Appellant's conduct, as described by Colbert, provides circumstantial evidence
that Appellant knowingly or intentionally caused Santos's death.

 Our review of the record as a whole, with consideration given to all of the evidence both for
and against the jury's finding, has not caused us to conclude that the proof of guilt is so obviously
weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction
clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to
support the jury's verdict. 

 Appellant's first, second, and third issues are overruled.


Violation of the Rule


 In his fourth issue, Appellant claims that the trial court reversibly erred when it permitted the
testimony of a witness who had violated Texas Rule of Evidence 614, which is commonly referred
to as "the rule."

 Rule 614 provides that the court shall, at the request of a party, order witnesses excluded so
that they cannot hear the testimony of other witnesses. See Tex. R. Evid. 614. Unless he falls within
one of the exceptions to the rule, a witness who enters the courtroom while another witness is
testifying violates the rule. Id. The purpose of the rule is to "prevent the testimony of one witness
from influencing the testimony of another, consciously or not." Russell v. State, 155 S.W.3d 176, 
179 (Tex. Crim. App. 2005).

 When a witness violates the rule, the trial court has discretion in determining whether the
witness's testimony should be excluded. Guerra v. State, 771 S.W.2d 453, 475 (Tex. Crim. App.
1988). Unless an abuse of discretion is shown, the trial court's decision will not be reversed. Id. 
If the rule was violated by a witness the party clearly anticipated calling to the stand, in determining
whether to exclude the witness's testimony, the trial court first determines whether the witness
actually heard the testimony or conferred with another witness without court permission. Id. at 474. 
 The trial court next considers whether the witness's testimony either (1) contradicts the testimony
of a witness he actually heard from the opposing side or (2) corroborates the testimony of another
witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or
innocence. Id.

 Here, Simmons testified for the State. After the rule had been invoked, but before Simmons
testified, he entered the courtroom. While Simmons was in the courtroom, one of the investigating
officers was testifying on behalf of the State regarding his investigation of the crime scene. 
However, Simmons did not testify with regard to the crime scene because he did not enter Santos's
house. Instead, Simmons testified about his providing Appellant a gun and his giving Appellant and
Christian a ride to Santos's house and, thereafter, to the hospital. Because Simmons's testimony did
not corroborate the testimony he overheard, we hold that the trial court did not abuse its discretion
in permitting Simmons to testify. Appellant's fourth issue is overruled.


Jury Misconduct


 In his fifth issue, Appellant contends that there was an instance of jury misconduct indicated
by a note the jury made to the trial court during its deliberations on Appellant's guilt or innocence.

 During deliberations, the jury sent the trial court a note that asked, among other things, "does
the definition of murder require intent to kill" and "if someone dies while a felony is committed,
even if not by intent, is this capital murder." In response to these questions, the trial court told the
jury, "[Y]ou will be governed by the instructions and definitions given to you in the Charge." 
Appellant did not object to the trial court's response. 

 The jury's note to the trial court is the sole evidence Appellant raises in support of his jury
misconduct issue. As such, the record establishes that the jury was instructed to base its decision on
the instructions and definitions given in the court's charge. Those instructions accurately set out the
law, including the culpability required to find Appellant guilty of murder. "We presume that jurors
follow the instructions." Lucero v. State, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008). Therefore,
we hold that the record does not support Appellant's contention that there was jury misconduct in
this case. Appellant's fifth issue is overruled.


Sua Sponte Instructions on Lesser Included Offenses

 In his sixth issue, Appellant argues that the manner in which the jury was charged amounts
to reversible error. Specifically, Appellant contends that once the trial court received the note from
the jury questioning the definition of intent, it should have charged the jury concerning manslaughter
and criminally negligent homicide. Appellant admits that he did not object to the trial court's
response to the jury's question. Further, Appellant never requested that the trial court charge the jury
on manslaughter or criminally negligent homicide.

 Upon the defendant's request, a trial court must include a lesser included offense instruction
in the jury charge if the requested charge is for a lesser included offense of the charged offense and
there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense. Guzman
v. State, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). However, the defendant must first request
an instruction. See id. Here, no such request was made. 

 Appellant acknowledges in his brief that he failed to request an instruction on these lesser
included offenses, but argues that the trial court's failure to sua sponte instruct the jury in this regard
amounted to "egregious harm." When an appellant fails to object to the charge at trial, he must
show egregious harm to prevail on appeal. See Ngo v. State, 175 S.W.3d 738, 743-44 (Tex. Crim.
App. 2005); see also Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). "Errors that
result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of
a valuable right,' or 'vitally affect a defensive theory.'" Ngo, 175 S.W.3d at 743 (quoting Hutch v.
State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). "[T]o determine whether the error was so
egregious that a defendant was denied a fair and impartial trial, a reviewing court should examine: 
(1) the entire jury charge; (2) the state of the evidence; (3) the arguments of counsel; and (4) any
other relevant information in the record." Id. at 750 n.48; Almanza, 686 S.W.2d at 171. 

 Appellant bases his contention on the aforementioned note from the jury to the trial court and
argues that the trial court should have given the lesser included offense instruction "since it was
apparent from the jury's questions that the jury had rejected the culpable mental states of intentional
and knowing[ ] and was considering homicide under a lesser degree of culpable mental state." The
trial court has the duty and responsibility to instruct the jury on the "law applicable to the case." 
Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). Thus, in discharging this duty, the trial
court is authorized to sua sponte include a charge on a lesser included offense if the charge meets
the two part test set forth in Rousseau v. State, 855 S.W.2d 666 (Tex. Crim. App. 1993). See Ford
v. State, 38 S.W.3d 836, 840, 841-42 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). Generally,
however, it is the defendant who affirmatively requests or objects to a charge regarding a lesser
included offense as a matter of trial strategy. Walton v. State, No. 14-06-00227-CR, 2007 WL
706582, at *1 (Tex. App.-Houston [14th Dist.] Mar. 8, 2007, pet. ref'd) (mem. op., not designated
for publication). Here, Appellant arguably had at least two opportunities--both before the charge
was submitted to the jury and when asked if he had any objection to the trial court's response to the
jury's note--to object to the court's charge and request an instruction on lesser included offenses. 
In both instances, Appellant declined to make such a request. 

 Judicial scrutiny of counsel's performance must be highly deferential; trial strategy must be
considered a valid rationale for a particular action, and counsel's decisions will not be second
guessed. See Lynn v. State, 860 S.W.2d 599, 603 (Tex. App.-Corpus Christi 1993, pet. ref'd). It
is not uncommon for counsel to employ an "all or nothing" tactic. Wood v. State, 4 S.W.3d 85, 88
(Tex. App.-Fort Worth 1999, pet. ref'd). Such a decision, although risky, is sometimes successful. 
Lynn, 860 S.W.2d at 603. In the instant case, it is apparent from the record, that while the court's
charge was not representative of a classic "all or nothing" tactic with regard to the instructions
submitted, we are no less inclined to conclude that there existed a possibility that Appellant's
strategy for his defense was to limit the offenses the jury could consider to the ones requiring a
higher degree of culpable mental state. The trial court gave Appellant at least two opportunities to
decide differently. Yet the record supports that Appellant chose to limit the jury's decision to finding
him guilty of capital murder or murder based either on intentional or knowing conduct, (1) or to acquit
him. Under the charge given to the jury, a finding that Appellant acted recklessly or with criminal
negligence alone would not be enough to convict. Thus, we conclude that it would be inappropriate
for the trial court to decide trial strategy for the defense. See, e.g., Walton, 2007 WL 706582, at *2. 
Therefore, we hold that the trial court did not err by declining to sua sponte instruct the jury
concerning the lesser included offenses of manslaughter or criminally negligent homicide. 
Appellant's sixth issue is overruled.


Disposition


 Having overruled Appellant's six issues, we affirm the trial court's judgment.


 BRIAN HOYLE 

 Justice

Opinion delivered December 17, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.




(DO NOT PUBLISH)
1. The issue of capital murder, which was submitted to the jury, is, in this instance, based on the issue of
whether Appellant, either individually or as a party to Christian's conduct, is guilty of intentional conduct committed
while in the course of committing a robbery. See Tex. Penal Code Ann. 19.03(a)(2) (Vernon Supp. 2008). The
issue of murder, which was also submitted to the jury, is based on the issue of whether Appellant, either individually
or as a party to Christian's conduct, is guilty of intentionally or knowingly causing Santos's death. See Tex. Penal
Code Ann. 19.02(b)(1).