COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JOHN KEVIN LYNCH, §

        Appellant, §

v. §

THE STATE OF TEXAS, §

        Appellee. §

§

No. 08-15-00180-CR

Appeal from the

Criminal District Court No. 1

of El Paso County, Texas

(TC#20140D00206)

## **O P I N I O N**

John Kevin Lynch appeals his convictions for aggravated assault with a deadly weapon and for retaliation. In his sole issue for review, Appellant claims his trial counsel rendered ineffective assistance by: (1) failing to investigate, interview, and call a key witness to testify; (2) failing to request a jury instruction on the lesser-included offense of deadly conduct; (3) failing to provide mitigation evidence during the punishment phase; and (4) failing to file an adequate motion for new trial. We affirm.

## **BACKGROUND**

At 6:00 in the morning on December 27, 2013, three Taco Cabana employees were arriving at a 24-hour Taco Cabana to relieve the night-shift employees and begin their morning shift. Among them were the shift manager, Sergio Guzman, and two shift workers, Gloria Rocha and

Cristian Salas. The trio arrived to a mess being cleaned up by the night-shift employees. When Guzman inquired about the mess, one of the night-shift employees told him the mess had been caused by two unruly customers, later identified as Appellant and his friend Derrick Yang. The employee stated Appellant had been causing them a lot of problems. Appellant and Yang had arrived sometime after 2:00, and Appellant appeared to be intoxicated. Appellant had been demanding a refund for food that he claimed was thrown away by the night-shift employees when he and Yang had temporarily stepped outside. Guzman addressed Appellant at the register and, because Appellant was apparently in an agitated state, requested he calm down. A verbal altercation then ensued between the two men, and Guzman asked Appellant to leave. Appellant refused. The verbal spat lasted about ten to fifteen minutes, and at some point, one of the employees called the police. Guzman became frustrated with the conversation and retreated to the restroom to end the argument. When he emerged from the restroom, Appellant was waiting for him and threw a handful of nachos and guacamole in his face.

At that moment another customer, Glen Lowrance, stood up and told Appellant to leave Guzman alone. Lowrance then grabbed Appellant by the shirt and pushed him out of the main doors of the Taco Cabana. Outside, Appellant went to his vehicle and retrieved a knife, and then attempted to re-enter the Taco Cabana through the main doors. But Lowrance and Guzman were holding the doors shut to prevent his entry, so Appellant and his friend Yang ran around and entered through a side door. Then, Appellant began pointing his knife in turn at the employees and Lowrance, so they all backed away to the opposite side of the restaurant. As Appellant continued his approach, Lowrance picked up a chair and used it to put space between the group and Appellant. Appellant lunged at Lowrance, but because he was intoxicated, managed to hit

2

himself with the chair and dropped the knife. Someone kicked the knife away, and Guzman, Lowrance, and Salas pinned Appellant on the ground and held him until police arrived. Officer Dana Ellingson received a call regarding an aggravated assault in progress and arrived at the Taco Cabana to find Appellant already in custody in the back of a squad car. Officer Ellingson was wearing a body camera and recorded the interaction he had with Appellant while the other officers were interviewing Lowrance and the employees. He observed Appellant was "very intoxicated," and during the interaction Appellant threatened to kill him on three separate occasions, once stating he would run Ellingson over the next time he saw him riding his motorcycle. Each time, Appellant followed up by saying he wished to retract his threats, but Officer Ellingson later testified he took the threats seriously and felt Appellant was capable of carrying them out.

Appellant was charged with two counts of aggravated assault with a deadly weapon for threatening Guzman and Lowrance with the knife, and one count of retaliation for his threats to kill Officer Elingson. Yang testified at trial on behalf of the defense. He relayed that he and Appellant had been drinking for a few hours when they arrived at the Taco Cabana around 2:00 a.m. Yang stated the two ordered food, but around 3:30 were called outside by police officers, who then asked them to leave the Taco Cabana because they were intoxicated. The two feigned leaving, but then reentered the Taco Cabana to finish their food. Once inside, the two noticed their food had been thrown away, and Appellant began demanding a refund. Yang testified he and Appellant remained there for almost three hours demanding either a refund or the return of their food. Yang testified that when the confrontation with Lowrance began, Appellant was never forced outside and, although he did pull a knife out, the knife remained in its sheath and Appellant only placed it on a trash can and did not point it at anyone. According to Yang, a scuffle began

3

between Appellant and Lowrance over a chair, and Yang stated Appellant was punched in the face during this altercation.

Appellant testified to substantially the same story as Yang. The only exception was he claimed Guzman and Lowrance were the aggressors, and while unarmed Lowrance hit him with the chair.

Lowrance did not testify at trial and the court granted Appellant's motion for directed verdict as to the aggravated assault against Lowrance. The jury found Appellant guilty of the remaining two counts of aggravated assault and retaliation. During the punishment phase, the State introduced evidence of four prior convictions. Appellant and his mother testified as to his good behavior and future potential. Appellant maintained his innocence during his testimony. The jury assessed punishment at fifteen-years' confinement for the aggravated assault, and ten-years' confinement for retaliation.

## DISCUSSION

### Ineffective Assistance of Counsel

In his sole issue for review, Appellant claims his trial counsel's cumulative errors rendered his performance constitutionally deficient, thus depriving him of his Sixth Amendment right to counsel. He specifically alleges his trial counsel: (1) failed to investigate, interview, and call Lowrance to testify to rebut the State's narrative; (2) failed to request a jury instruction on the lesser-included offense of deadly conduct; and (3) failed to provide mitigating evidence during the punishment phase. In his reply brief, Appellant additionally claims counsel failed to file an adequate motion for new trial.

### *Standard of Review*

4

A criminal defendant is entitled to be represented by effective, competent counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). But this right does not entitle a defendant to errorless or perfect representation as judged by the benefits of hindsight; rather, it entitles him to reasonably effective assistance of counsel. *Cueva v. State*, 339 S.W.3d 839, 858 (Tex.App.--Corpus Christi-Edinburg 2011, pet. ref'd)(citing *Rylander v. State*, 101 S.W.3d 107, 109-10 (Tex.Crim.App. 2003)).

Claims of ineffective assistance of counsel are reviewed under the two-step analysis adopted by the United States Supreme Court in *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a probability that but for counsel's unprofessional errors, the results of the proceeding would have been different. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). To satisfy the requirements of the first prong, appellant must show counsel's performance was so deficient that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Id.*, (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). That is, the appellant must prove there was no plausible professional reason for a specific act or omission by counsel. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002). If counsel was deficient, we must determine whether there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Adekeye v. State*, 437 S.W.3d 62, 73 (Tex.App.--Houston [14th Dist.] 2014, pet. ref'd). That is, appellant must show counsel's deficient performance prejudiced the defense. *Jackson*, 877 S.W.2d at 771. The two prongs of the *Stickland* test do not need to be analyzed in any particular order, and an appellant's failure to

5

satisfy either prong defeats a claim of ineffective assistance of counsel. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)(citing *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069).

Any allegation of ineffective assistance must be affirmatively demonstrated by the record, and in most cases on direct appeal, the record is insufficiently developed to adequately demonstrate the motives behind counsel's decisions. *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex.Crim.App. 1999); *Mallet v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Appellant must overcome the presumption that counsel's actions fell within a wide range of reasonable professional assistance, and our review of counsel's representation is highly deferential. *Strickland*, 466 U.S. at 689-91, 104 S.Ct. at 2065-66; *Mallet*, 65 S.W.3d at 63. "We have said that we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex.Crim.App. 2005). Finally, a claim of ineffective assistance cannot be established by reviewing one portion of trial counsel's performance in isolation; the sufficiency of counsel's representation must be gauged by the totality of the representation. *Perez v. State*, 310 S.W.3d 890, 894 (Tex.Crim.App. 2010); *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983).

**Analysis**

Failure to Investigate

The first alleged error complained of by Appellant is counsel's failure to interview and call potential witness Glen Lowrance to testify. A criminal defense attorney "must have a firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance of counsel." *Ex Parte Welborn*, 785 S.W.2d 391, 394 (Tex.Crim.App. 1990).

6

This includes a duty to make reasonable investigations or to make a reasonable decision that a particular investigation was unnecessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066; *Perez*, 310 S.W.3d at 894. A decision by counsel to not conduct a particular investigation is directly assessed for reasonableness in all the circumstances, and appellate courts are required to provide a heavy measure of deference to counsel's judgments. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066; *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App. 1986); *Donald v. State*, 543 S.W.3d 466, 477 (Tex.App.--Houston [14th Dist.] 2018, no pet.). An appellate court will not reverse a conviction based on failure to investigate unless the consequence of that failure "is that the only viable defense available to the accused is not advanced." *Donald*, 543 S.W.3d at 477.

Part of the duty to investigate is counsel's responsibility to seek out and interview potential witnesses. *Ex parte Welborn*, 785 S.W.2d at 394. To demonstrate ineffective assistance of counsel based on an uncalled witness, an appellant must show two things: (1) the witness would have been available to testify; and (2) the witness's testimony would have been of some benefit to the defense. *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex.Crim.App. 2007); *Ex parte White*, 160 S.W.3d 46, 52 (Tex.Crim.App. 2004).

Here, Appellant claims his trial counsel failed to investigate, interview, or subpoena to testify, Glen Lowrance. Because Appellant repeatedly asserted Lowrance was the aggressor, he argues, Lowrance was a key witness and counsel's failure to investigate deprived the jury of hearing Lowrance's testimony, thus prejudicing the defense. But Appellant has neither demonstrated Lowrance would be available to testify nor shown, beyond his own speculation, what Lowrance's testimony would have been, and thus has not shown ineffective assistance of counsel based on an uncalled witness. *Ex parte Ramirez*, 280 S.W.3d at 853. Further, because his claim

of failure to investigate is based solely on counsel's failure to interview or to call Lowrance as a witness, and the record is otherwise silent regarding counsel's decision, Appellant has failed to show counsel was ineffective in his investigation. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066; *Perez*, 310 S.W.3d at 894.

<u>Failure to Request Instruction on Lesser-included Offense</u>

Counsel's second alleged error was his failure to request a jury instruction on the lesser-included offense of deadly conduct. The Court of Criminal Appeals has held not requesting a jury charge that would have aided the defendant constitutes ineffective assistance of counsel. *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). This is not categorical, however, and it can be a reasonable trial strategy to decide not to request a charge on a lesser-included offense. *Wood v. State*, 4 S.W.3d 85, 87 (Tex.App.--Fort Worth 1999, pet. ref'd); *Davis v. State*, 930 S.W.2d 765, 768 (Tex.App.--Houston [1st Dist.] 1996, pet. ref'd); *Lynn v. State*, 860 S.W.2d 599, 603 (Tex.App.--Corpus Christi-Edinburg 1993, pet. ref'd). To establish a claim of ineffective assistance of counsel for failing to request a lesser-included offense, an appellant must demonstrate he was entitled to the lesser-included offense. *Cardenas v. State*, 30 S.W.3d 384, 392-93 (Tex.Crim.App. 2000). In *Rousseau*, the Court of Criminal Appeals established a two-prong test to demonstrate entitlement to a jury charge on a lesser-included offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993), *cert denied*, 510 U.S. 919, 114 S.C.t 313, 126 L.Ed.2d 260 (1993). An appellant must show: (1) the lesser-included offense is included within the proof necessary to establish the offense charged; and (2) some evidence exists in the record that if appellant is guilty, he is guilty only of the lesser offense. *Id*.

Here, Appellant asserts no competent attorney would have failed to request a jury charge

on the lesser-included offense of deadly conduct, because it is well established that deadly conduct is a lesser-included offense of aggravated assault by threat. He further asserts that because he and Yang both testified Appellant had pulled the knife out and placed it on the trash can, a rational jury could have concluded he was only guilty of deadly conduct. Even assuming, without deciding, Appellant has met both prongs of the *Rousseau* test, there is nothing in the record—one way or the other—explaining counsel's failure to request a charge on the lesser-included offense of deadly conduct. Where the record is silent regarding the reason for counsel's omitting to request a charge, it is not possible to decide whether the failure to request the charge is ineffective assistance of counsel because it could have been part of a reasonable trial strategy. *Thompson*, 9 S.W.3d at 813-14; *Davis*, 930 S.W.2d at 768; *Lynn*, 860 S.W.2d at 603; *see also Jackson v. State*, 08-05-00135-CR, 2006 WL 1711098, at *4 (Tex.App.--El Paso June 22, 2006, no pet.)("Because the record is silent regarding counsel's trial strategy, we must presume that he had a plausible reason for not requesting an instruction on the lesser-included offense of resisting arrest and that he acted within the range of reasonable professional assistance."). Accordingly, Appellant has not shown counsel was ineffective for failing to request a jury-charge instruction on deadly conduct.

<u>Failure to Present Mitigation Evidence During Punishment</u>

The third of counsel's alleged errors complained of by Appellant was that he failed to properly prepare the punishment-phase witnesses—Appellant's mother and Appellant—to provide mitigation testimony. Specifically, he claims some of the unpolished answers given by the witnesses show counsel did not prepare them, or did not adequately prepare them, for trial and thus rendered ineffective assistance. He points to the mother's seeming confusion regarding whether Appellant was current with his child support payments, and to Appellant's statement he would

9

"pass the question," when asked by the prosecution about a pending drug charge. He cites no Texas cases supporting his proposition, instead relying on a decision of North Carolina's supreme court and a district court opinion from the District of Colombia. Even were we to entertain this argument, there is no record evidence here supporting the claimed failure to prepare the witnesses beyond the conjecture provided in Appellant's brief. Further, while Appellant does cite a Texas case suggesting that a failure to present certain mitigation evidence *could* have prejudiced the defense, in that case, counsel failed to introduce mitigation evidence regarding bipolar disorder and hospitalization. *Barnett v. State*, 338 S.W.3d 680, 686-87 (Tex.App.--Texarkana 2011, no pet.). But here, Appellant is not alleging counsel failed to introduce certain mitigating evidence, but rather asserts the mitigating evidence introduced—the testimony of Appellant and his mother—showed a failure to adequately prepare the witnesses. Again, evidence of ineffective assistance must be *firmly* founded in the record, and the imperfect answers of witnesses do not affirmatively demonstrate ineffective assistance. *Ex parte Welborn*, 785 S.W.2d at 393; *Moore v. State*, 700 S.W.2d 193, 206 (Tex.Crim.App. 1985). Accordingly, Appellant has failed to show counsel was ineffective for failing to present mitigation evidence.

Issues Raised in a Reply Brief

Finally, Appellant claims his counsel was ineffective for failing to present a motion for new trial to the trial court, thus leaving substitute counsel a slim window in which to file a motion for new trial. Appellant did not include this assertion in his initial brief, instead raising it for the first time in his reply brief. It is well settled under Texas law that a reply brief is not intended to allow an appellant to raise new issues. *State v. Sanchez*, 135 S.W.3d 698, 700 (Tex.App.--Dallas 2003), *aff'd*, 138 S.W.3d 324 (Tex.Crim.App. 2004); *Heras v. State*, 786 S.W.2d 72, 72-73

(Tex.App.--El Paso 1990, no pet.). Indeed, Rule 38.3 of the Texas Rules of Appellate Procedure provides that a reply brief should only respond to the arguments presented in the appellee's brief. TEX.R.APP.P. 38.3; *Houston v. State*, 286 S.W.3d 604, 612 (Tex.App.--Beamont 2009, pet. ref'd). Accordingly, we decline to address the issue not properly raised in Appellant's brief.

Because Appellant has not demonstrated that any of the alleged errors of his trial counsel amounted to ineffective assistance of counsel, viewing the totality of the representation we find Appellant has not overcome the presumption that counsel's actions fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689-91, 104 S.Ct. at 2065-66; *Mallet*, 65 S.W.3d at 63. Accordingly, Appellant's sole issue is overruled.

## CONCLUSION

Having overruled Appellant's only issue, the judgment of the trial court is affirmed.

June 29, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., Not Participating

(Do Not Publish)